UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————————

FRANK D. WILLIS,

    Plaintiff/Counter-Defendant,

v.                                                        Case No. 1:12-CV-1140

U.S. BANK,                                     HON. GORDON J. QUIST

    Defendant/Counter-Plaintiff.
_____/

## OPINION

Plaintiff, Frank Willis, commenced this action against Defendant, U.S. Bank, in Van Buren County Circuit Court, Michigan. Defendant removed the case to the United States District Court for the Eastern District of Michigan, and the case was transferred to this Court. Willis claims, among other things, that Defendant breached an automobile lease contract between the parties. Defendant has filed a Counterclaim and now moves to dismiss Willis's Complaint for failure to state a claim and moves for summary judgment on the Counterclaim. For the reasons set forth below, the Court will grant both of Defendant's motions.

### I. BACKGROUND[1]

On November 19, 2008, Willis entered into a 39-month Motor Vehicle Lease Agreement (Lease) with U.S. Bank for a 2009 Buick Enclave. (*See* Ex. A, Docket no. 1, Page ID 26.) Willis made timely monthly payments for the entire Lease Term. Willis alleges that before the end of the

---

[1] The following facts are taken from Plaintiff's Complaint and attachments to the Complaint. (Ex. A, Docket no. 1.) Although a court is normally precluded from considering matters outside of the pleadings in addressing a motion to dismiss for failure to state a claim, courts recognize an exception for documents attached to or referenced in the complaint. "When a court is presented with a Rule12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto . . . so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

Lease Term Defendant and Willis "agreed that it was acceptable for the Lessee [Willis] to NOT have a lease-end examination prior to the end of the 39 months and that the examination would take place by US Bank after the Lessee turned the vehicle in at John Tapper Automotive, Inc." (*Id.* at 8–9.) Willis further alleges that he returned the vehicle "in mint condition" on its due date, February 19, 2012. Prior to turning in the vehicle, Willis "spent approximately $3,000.00 to repair a small dent in the side of the Buick and an additional $650.00 to replace all 4 tires on the vehicle" and "spent most of the day completely cleaning the seats and floor mats" so the vehicle "looked almost new." (*Id.* at 9.)

On or about March 24, 2012, Willis received a bill from Defendant indicating that Willis owed Defendant $5,735.41, subdivided into several categories:

| | |
|---|---|
| Contractual Termination Fee | $395.00 |
| Excess Wear & Tear | $1303.44 |
| Excess Mileage Charge | $3688.74 |
| Late Fees | $25.00 |
| Sales Tax | $323.23 |
| **Total Termination Charges** | **$5735.41** |
| **Net Termination Charges Due** | **$5735.41** |

(*Id.* at 32.) The bill did not detail the reasons for the excess wear and tear charges.

On or about March 30, 2012, Willis sent a letter to Defendant asking Defendant to explain the charges and stating that Willis had returned the vehicle on the exact due date of February 19, 2012, not March 2, 2012. In response, Defendant sent Willis a letter dated May 7, 2012, explaining the charges and identifying the pertinent provisions of the Lease for each charge. Defendant also enclosed with the letter (1) a copy of the Lease, (2) a copy of a letter dated December 5, 2008 that explained that the Lease explicitly limited the mileage to an average of 12,000 miles per year,[2] and (3) an inspection report dated March 15, 2012, from Flint Auto Auction, Inc. regarding excessive

---

[2] Willis does not appear to dispute that he drove the vehicle 20,493 miles more than the mileage allowed under the terms of the Lease. (See Ex. A, Docket no. 1, Page ID 36.)

wear damage and the estimated cost to repair the damage. The report included thumbnail prints of digital photos of the damage. The enumerated charges included damage to the windshield, rear glass, a right rocker panel, a missing key, and worn front seats. Defendant's letter listed the total excess wear and use charge as $1303.44. The report listed the total damage (excluding labor) as $1642.44. It appears from the discrepancy that Defendant did not charge Willis for all of the alleged damage assessed. Finally, although Defendant could not confirm that Willis returned his car before March 2, 2012, it agreed to waive the $25.00 late fee because Willis had returned the vehicle within the 10-day grace period. Therefore, Defendant's letter indicated that the balance due was $5,710.41.

On or about May 11, 2012, Willis responded to Defendant by letter, advising Defendant that Willis had decided to exercise his right to purchase the vehicle, which Willis said would negate the charges for excess mileage, excess wear and tear, the termination fee, and sales tax. On May 17, 2012, Defendant informed Willis by letter that the vehicle had been sold on March 28, 2012 to Flint Auto Auction, Inc. Defendant further stated that purchase of the vehicle was "no longer an option" available to Willis because Willis had not exercised his purchase option at the end of the Lease Term. Defendant also advised that the original bill had a due date of April 18, 2012, which would be considered past due on May 18, 2012, and cautioned Willis to "[p]lease remit your payment upon receipt of this letter to avoid any possible negative credit reporting." On or about June 28, 2012, Defendant sent Willis a notification stating, "[f]ederal law requires us to notify you that we have told a credit bureau about a late payment, missed payment or other default on your account. This information may be reflected in your credit report." (*Id.* at 51.)

On or about August 24, 2012, Willis commenced this lawsuit. Willis alleges seven remaining claims:[3] (1) breach of the Lease, (2) breach of fiduciary duty, (3) negligent infliction of

---

[3] Willis has conceded three of his claims: violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, the Michigan Occupational Code, Mich. Comp. Laws § 339.901 *et seq.*, and the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.* (Pl.'s Br. Resp. Def.'s Mot. Dismiss Verified Compl. & Mot.

3

emotional distress, (4) fraud and misrepresentation, (5) negligent misrepresentation, (6) violation of the Michigan Regulation of Collection Practices Act, Mich. Comp. Laws § 445.251 *et seq.*, and (7) conversion.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

Defendant has filed a motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, "a plaintiff's obligation to provide the 'grounds' for his 'entitle[ment] to relief' requires more than labels and conclusions[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 46, 47, 78 S. Ct. 99, 102, 103 (1957)). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 556, 127 S. Ct. 1965.

For purposes of a 12(b)(6) motion, a court must accept all of the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

---

Summ. J. Counterclaim, Docket no. 10, Page ID143–45.)

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## B. Summary Judgment

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

In deciding a motion for summary judgment, a court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010).

## III. DISCUSSION

## A. Breach of Lease

First, Willis alleges that Defendant breached the Lease. Willis offers two bases for his claim: (1) Defendant refused to allow Willis to exercise his option to purchase the vehicle, and (2) Defendant "demanded payment for damages that were not incurred." (Compl., Docket no. 1, Page ID 13.)

In Michigan, "[t]he proper interpretation of a contract is a question of law." *Coates v. Bastian Bros., Inc.*, 276 Mich. App. 498, 503, 741 N.W.2d 539, 543 (2007). Michigan courts

5

"examine[] contractual language and give[] words their plain and ordinary meanings." *Id.* "In other words, if 'contract language is neither ambiguous nor contrary to ... statute, the will of the parties, as reflected in their agreement, is to be carried out, and thus the contract is enforced as written.'" *Id.* (quoting *Muci v. State Farm Mut. Auto. Ins. Co.*, 267 Mich. App. 431, 435, 705 N.W.2d 151, 154 (2005), *reversed on other grounds by* 478 Mich. 178, 732 N.W.2d 88 (2007)). "A contract is ambiguous when two provisions 'irreconcilably conflict with each other,' or 'when [a term] is equally susceptible to more than a single meaning.'" *Id.* (internal citations omitted). Whether a contract is ambiguous is a question of law. *Id.* (citing *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 47, 664 N.W.2d 776, 780 (2003)). "Only when contractual language is ambiguous does its meaning become a question of fact." *Id.*

In this case, the applicable provisions of the Lease provide:

**10. PURCHASE OPTION AT END OF LEASE TERM**
If you have fully performed all of your obligations under this Lease, including paying the total of your Monthly Payments and all other amounts due under this Lease, then you have an option to purchase the Vehicle AS IS at the end of the Lease Term for $19,000, plus any taxes, official fees and other charges related to such purchase.

\* \* \*

**18. PURCHASE OPTION**
A. END OF LEASE TERM. At scheduled Lease termination, you have an option to purchase the Vehicle AS IS as set forth in <u>Section 10</u> of this Lease.

\* \* \*

**21. SCHEDULED TERMINATION**
Except for Early Termination, this Lease will terminate or end upon:
A. The end of the Lease Term;
B. Return of the Vehicle;
C. Completion of a signed odometer statement; and
D. Payment of the following amounts:
    (1) The Termination Fee;
    (2) Any amounts owed for Excess Wear;
    (3) Any amounts owed for Excess Mileage;
    (4) All amounts due and unpaid under this Lease; and
    (5) Any official fees and taxes due in connection with Lease termination.

(Compl., Docket no. 1, Page ID 26–29.)

## 1. *Option to Purchase*

Willis first argues that the Lease is ambiguous as to when a lessee may exercise his option to purchase his leased vehicle. Reading Sections 18(A) and 21 together, Willis argues that a lessee must have an option to purchase his vehicle until the date the lease officially terminates, which is the date after the end of the Lease Term on which the lessee has returned the vehicle, signed an odometer statement, *and* paid outstanding amounts due.

Willis's interpretation is unfounded for several reasons. First, the Lease unambiguously distinguishes between the "Lease Term" and the end of the Lease. Section 8(H) specifically defines the Lease Term as 39 months. Section 21 defines the "termination" of the Lease agreement as a date on which several criteria are satisfied. The fact that the "end of the Lease Term" is one criteria within the definition of the termination of the Lease makes it apparent that the drafters and contracting parties intended the terms to have distinct and separate meanings. Michigan courts read contracts as a whole, giving harmonious effect to each word and phrase when possible. *See Wilkie*, 469 Mich. at 49, 664 N.W.2d at 781. Therefore, any possible ambiguity in Section 18(A) is easily resolved by Section 10, as Section 18(A) explicitly refers the reader to Section 10. Section 10 expressly provides that a lessee who has fully complied with the contract may exercise his option to purchase at the "end of the Lease Term," *not at the termination period* of the Lease. Moreover, the caption heading for both sections uses the language, "END OF LEASE TERM," not termination of Lease, thus putting a reader on notice that the time at which a lessee may exercise his purchase option rights is at the end of the Lease Term.

Second, Willis's interpretation is not logical. Willis's interpretation would require a vehicle's lessor to wait until a lessee—who has already returned his vehicle—pays the fees owed before it can sell the vehicle. The more logical interpretation is that when a lessee returns a vehicle,

7

he has implicitly chosen not to exercise his option to purchase the vehicle and the lessor may now sell the vehicle to another buyer. Defendant was not unreasonable to assume that Willis had declined to exercise his option to purchase the vehicle.

## 2. *Payment for Damages Not Incurred*

Willis also argues that Defendant has breached the lease because Defendant has "demanded payment for damages that were not incurred." However, Willis offers no factual basis for his claim. He does not explain which itemized damages he contests or why. Willis reiterates in response to Defendant's Motion for Summary Judgment on the Counterclaim that "Defendant has still not provided sufficient proof that Mr. Willis should be subject to any excess wear and tear" and the "charges appear to be completely discretionary." (Docket no. 10, Page ID 139.)

The pertinent portion of the Lease states:

> **19. EXCESS WEAR AND USE**
> We have based the Monthly Payment on the assumption that you will not subject the Vehicle to excess wear and use. You agree not to expose the Vehicle to excess wear and use. If you do so and if you do not purchase the Vehicle at the scheduled end of the Lease Term, *you agree to pay us the amount that it would cost to make all repairs to the Vehicle that are not the result of normal wear whether or not we, in our sole discretion, actually make the repairs. Any excess wear and use assessed at scheduled termination of this Lease will be based upon an estimate of the repair cost unless we actually make the repairs.*
>
> Excess wear and use includes, but is not limited to, the amount it would cost to repair: (1) inoperative mechanical parts, including power accessories; (2) dented, scratched, chipped, or rusted areas on the body; (3) mismatched paint or any special identification mark; (4) cracked, scratched, pitted, or chipped windows, broken or discolored windows or inoperative window mechanisms; (5) broken headlight lenses or sealed beams; (6) scratches more than two inches long through the chrome on bumpers or bumper dents; (7) broken grills or dents in the grills; (8) single dents or a series of dents on other trim parts, including headlight and tail light bezels; (9) electronic malfunctions; (10) seats, seat belts, headlining, dashboards, door panels or carpeting which is torn or damaged beyond ordinary wear and tear or is burned; (11) major fluid leaks; (12) damaged exhaust systems; (13) damage from flood, water, hail or sand; (14) damage which makes the Vehicle either unsafe or unlawful to operate; (15) all damage which would be covered by the required comprehensive collision and upset insurance whether or not such insurance actually is in force; and (16) the Vehicle to restore any original equipment or accessories which were removed or altered during the Lease Term.

> Excess wear and use also includes, but is not limited to, the amount it would cost to replace: (i) any tire not part of a matching set of five tires (or four with emergency "doughnut" spare if initially so equipped); (ii) any tires with less than 1/8 inch of tread remaining at the shallowest point; (iii) any tire with gouged, cut, torn or plugged sidewalls; (iv) any missing or dented parts, accessories and adornments, including bumpers, jacks, ornamentation, aerials, hubcaps, chrome stripping, rear view mirrors, radio and stereo components or spare tire; or (v) any parts which are not original manufacturer equipment or of equal quality and design.

(Compl., Docket no. 1, Page ID 29 (emphasis added).)

Here, Defendant has provided Willis with an itemized list of assessed damage and a copy of the inspection report by Flint Auto Auction, Inc., which includes evidence that photos were taken of the damage. (Docket no. 1, Page ID 37, 43–44.) The Lease provisions enumerate the types of damage that constitute excessive wear and use. Willis does not contest the language of Section 19; he merely disputes that any damage was excessive. However, Willis has failed to identify which damages he contests or articulate any reasons in support of his argument. Willis also implicitly argues that Defendant has the burden to prove that Willis owes fees for excessive wear and use. However, in a motion to dismiss for failure to state a claim, the burden is on Willis to show that Defendant has breached the Lease. Thus, the Court must dismiss Willis's claim for failure to state a claim.

In this case, the Lease provisions neither "irreconcilably conflict with each other" nor are the disputed terms "equally susceptible to more than a single meaning." *Coates*, 276 Mich. App. at 503, 741 N.W.2d at 543. Because the contract language is neither ambiguous nor contrary to statute, the Court will enforce the contract as written. *See id.*

### 3. *Defendant's Counterclaim*

Relatedly, Defendant has filed a Counterclaim and a Motion for Summary Judgment on the Counterclaim, alleging Willis has breached the Lease. Defendant argues that there is no genuine issue of material fact on the issues of (1) whether Willis had a right to exercise his option to

purchase the leased vehicle, or (2) whether Willis incurred excessive wear and use damages to the vehicle within the meaning of the Lease. Willis does not dispute the other charges. Regarding the first issue, the Court has explained that the proper interpretation of a contract is a question of law. *Coates*, 276 Mich. App. at 503, 741 N.W.2d at 543. Only if a court determines that the language of a contract is ambiguous does it become a question of fact. *Id.* Here, the Court has resolved that the Lease is not ambiguous with regard to Willis's option to purchase. Therefore, Willis has not presented a genuine issue of material fact on his first issue. Regarding the second issue, Defendant has presented an inspection report from Flint Auto Auction, Inc. that itemizes the excessive wear and use charges and provides estimates of the costs of repair, as outlined in Section 19 of the Lease. Willis's only evidence to refute these charges is his verified Complaint, in which he avers that he returned the vehicle in "mint condition." Even viewing the evidence in the light most favorable to Willis, the Court finds that no rational trier of fact could find for Willis on the issue of breach of contract. Therefore, the Court will grant summary judgment on the Counterclaim in favor of Defendant.

Defendant has also requested reasonable attorney's fees and court costs, pursuant to Lease Section 23. Within fourteen days of this Opinion, Defendant shall file a statement of fees incurred, setting forth its counsels' hourly rates and a detailed description of all work performed in this case, including the amount of time performed on each task. Plaintiff and his counsel shall have fourteen (14) days from the date Defendant files its statement of fees to file objections.

### B. Breach of Fiduciary Duty

Next, Willis argues that Defendant has breach its fiduciary duties of "loyalty, honesty, due care and good faith and fair dealing," which existed "by virtue of their basic relationship; specifically, [Willis] placed his reliance on the representations of Defendant." (Compl., Docket no. 1, Page ID 14.) Willis alleges that the basis of the breach is that Defendant "negligently

misrepresent[ed] the status of the leased vehicle and fraudulently increas[ed] the amount that it claimed [Willis] owed, despite the fact that [Willis] had been returned [sic] the vehicle in excellent condition, and then unlawfully failed to provide [Willis] with the option to purchase the vehicle immediately after assessing unreasonable fees" and "deliberately failing to remedy the mistakes when they were addressed."

A fiduciary relationship arises under Michigan Law "from the reposing of faith, confidence, and trust and the reliance of one upon the judgment and advice of another." *Vicencio v. Ramirez*, 211 Mich. App. 501, 508, 536 N.W.2d 280, 284 (1995). Relief is granted for violation of a fiduciary relationship "when such position of influence has been acquired and abused, or when confidence has been reposed and betrayed." *Id*. "'Whether a duty exists is a question of law for the court to decide.'" *Stover v. Secura Ins. Co.*, Nos. 252613 & 252625, 2005 WL 1367103, at * 6 (Mich. Ct. App. June 9, 2005) (quoting *Harts v. Farmers Ins. Exchange*, 461 Mich. 1, 6, 597 N.W.2d 47, 50 (2001)). A fiduciary relationship generally does not arise within the lender-borrower context. *Farm Credit Servs. of Michigan's Heartland, P.C.A. v. Weldon*, 232 Mich. App. 662, 680, 591 N.W.2d 438, 447 (1998) (finding that merely because a plaintiff was a lender and maintained control over the terms of a defendant's loan repayment and participated in discussions about how much money defendants needed to borrow did not establish a fiduciary relationship); *see also Ulrich v. Fed. Land Bank of St. Paul*, 192 Mich. App. 194, 196, 480 N.W.2d 910, 911 (1991) (finding a plaintiff's inexperience and reliance on a bank was insufficient to establish a fiduciary relationship).

In this case, Willis has failed to identify any legal authority for his argument that Defendant, a lessor of an automobile, has any fiduciary duty to Willis. Therefore, Willis fails to state a claim for breach of fiduciary duty.

### C. Negligent Infliction of Emotional Distress

Willis also alleges a claim against Defendant for negligent infliction of emotional distress. Willis's factual allegations are that "Defendant misrepresented the status of [Willis's] lease agreement, negligently and/or fraudulently increased the amount that [Defendant] claimed [Willis] owed despite the fact that he had returned the leased vehicle in excellent condition, neglected or otherwise failed to answer [Willis's] questions when asked, committed substantial errors, and otherwise negligently or deliberately failed to remedy the mistakes when they were addressed." (Compl., Docket no. 1, Page ID 15.)

Michigan courts have recognized negligent infliction of emotional distress claims premised on a theory of direct causation, as opposed to a bystander recovery theory. *See Daley v. LaCroix*, 384 Mich. 4, 12–13, 179 N.W.2d 390, 395 (1970) (finding where a "definite and objective physical injury is produced as a result of emotional distress proximately caused by defendant's negligent conduct," a plaintiff may state a cause of action).

In this case, Willis concedes that the only theory of recovery for negligent infliction of emotional distress is the direct causation theory. However, Willis's reliance on that theory is misplaced. As the Michigan Supreme Court has articulated, Michigan common law "recognizes emotional distress as the basis for a negligence action only when a plaintiff can also establish physical manifestations of that distress." *Henry v. Dow Chem. Co.*, 473 Mich. 63, 79, 701 N.W.2d 684, 692 (2005) (citing, *inter alia*, William Lloyd Prosser & W. Page Keeton, Torts 361(5th ed. 1984)) ("Where the defendant's negligence causes only mental disturbance, without accompanying physical injury, illness or other physical consequences, and in the absence of some other independent basis for tort liability, the great majority of courts still hold that in the ordinary case there can be no recovery."). Here, Willis makes no allegations of physical injury with respect to his negligent infliction of emotional distress claim. Moreover, Willis's factual allegations are vague and lack support in, and in some instances are directly contradicted by, the exhibits attached to the

Complaint. For example, Willis does not provide any examples of how Defendant negligently increased the amount Willis owed, neglected to answer Willis's questions, or remedy alleged mistakes. At best, the allegations are conclusory. Thus, Willis's claim must fail.

A recent case from the Michigan Court of Appeals provides a useful comparison to the present case. In *Benny v. Golling Chrysler Jeep Dodge, Inc.*, a plaintiff brought a claim for negligent infliction of emotional distress after a defendant allegedly made a clerical error when plaintiff returned his leased vehicle. No. 304327, 2012 WL 2362723, at * 1 (Mich. Ct. App. June 21, 2012). The error resulted in the plaintiff's other leased vehicle being reported stolen from an auction lot, which ultimately led the police to detain the plaintiff on suspicion that he was driving a stolen vehicle. *Id.* The plaintiff claimed that he had suffered physical, emotion, and psychological damage as a result of the defendant's actions. *Id.* The Court of Appeals affirmed a lower court's grant of summary disposition to the defendant. *Id.* The court reasoned that the plaintiff had failed to state a claim because he failed to allege that he witnessed a negligent injury to a third party—an element of the bystander theory of negligent infliction of emotional distress. *Id.* In effect, the court implicitly refused to find a claim under a direct theory of negligent infliction of emotional distress. Similarly, this Court concludes that Willis's allegations that Defendant has increased the amount of fees owed, failed to answer his questions, and failed to remedy its mistakes are not sufficient to state a claim for which relief may be granted.

### D.  Fraud and Misrepresentation

Willis next alleges Defendant knowingly made two false representations: (1) that Willis was unable to purchase the leased vehicle, and (2) Willis owed almost $6,000.00 in damages. Willis states Defendant made the statements to induce Willis's reliance, but does not explain how or when Willis relied on Defendant's representations.

13

Federal Rule of Civil Procedure 9(b) requires claimants to plead fraud allegations "with particularity." Fed. R. Civ. P. 9(b). Accordingly, a plaintiff must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (quoting *Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)). To establish fraud, a plaintiff must show "(1) the defendant made a material representation; (2) the representation was false; (3) when defendant made the representation, the defendant knew it was false, or made recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage." *Cummins v. Robinson Twp.*, 283 Mich. App. 677, 695–96 (2009). When a contract governs the relationship between the parties, a plaintiff must also allege "a violation of a legal duty separate and distinct from the contractual obligation" to state a claim for fraud. *Rinaldo's Constr. Corp. v. Michigan Bell Tel. Co.*, 454 Mich. 65, 84, 559 N.W.2d 647, 658 (1997).

Here, Willis only alleges fraud or misrepresentation on the basis of the contractual obligations of the parties. Like in *Rinaldo's Construction Corporation v. Michigan Bell Telephone Company*, Defendant did not voluntarily assume any other duty aside of those enumerated in the Lease, and Willis fails to identify any. *See id.* Moreover, Willis's allegations are conclusory and threadbare within the meaning of *Iqbal*, 556 U.S. at 664, 129 S. Ct. at 1941. Willis offers no factual allegations to support that the representations were false, made knowingly, or that he relied on the representations. Therefore, the Court will dismiss Willis's fraud and misrepresentation claim.

### E. Negligent Misrepresentation

Willis also alleges a claim for negligent misrepresentation. He contends that Defendant owed him a duty to make representations with reasonable care and Defendant failed to do so when

it told Willis that (1) he was unable to purchase the vehicle after he had returned it, and (2) he "owed almost $6,000.00 in damages." (Compl., Docket no. 1, Page ID 17.)

"A claim for negligent misrepresentation requires plaintiff to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Unibar Maint. Servs., Inc. v. Saigh*, 283 Mich. App. 609, 621, 769 N.W.2d 911, 919 (2009). A plaintiff must also allege a "legal duty separate and distinct from the contractual obligations" to state a claim for negligent misrepresentation. *Rinaldo's*, 454 Mich. at 84, 559 N.W.2d at 658.

In this case, Willis alleges two legal duties that Defendant owes to Willis. First, he argues Defendant owes him a general duty of reasonable care. However, the duty of reasonable care in this context does not constitute a separate and distinct duty from the contractual obligation. As in *Rinaldo's*, Willis only alleges a duty to perform with reasonable care the duties enumerated in the Lease. *Cf.* 454 Mich. at 84, 559 N.W.2d at 658. Moreover, Willis provides no factual support for Defendant's failure to exercise this duty. Second, Willis offers a late argument that Defendant has a "duty to disclose information" to Willis. (Pl.'s Resp. Def. Mot. Dismiss Verified Compl., Docket no. 10, Page ID 14.) However, Willis does not explain what information Defendant failed to disclose, even if Defendant had a duty. A careful review of the record reveals that Defendant refused to disclose to Willis the sale price of the leased vehicle to Flint Auto Auction, Inc. However, the Court finds no support for the proposition that Defendant was required to disclose that information, nor is it relevant to Willis's negligent misrepresentation claim. Even if Willis were to establish these duties were separate and distinct from the contractual obligations, his arguments are not plausibly pleaded. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the

pleader is entitled to relief." *Id.* at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). Willis's allegations do not support more than a sheer possibility that Defendant has acted unlawfully.

### F. Michigan Regulation of Collection Practices Act

Willis next alleges that Defendant violated the Michigan Regulation of Collection Practices Act, Mich. Comp. Laws § 445.251 *et seq*. Specifically, Willis alleges Defendant violated §§ 445.252(e) & (n) by making an "inaccurate, misleading, untrue, deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt" and using a "harassing, oppressive, or abusive method to collect a debt." Subsection (n) prohibits, among other actions, continuously calling a person on the telephone or calling at unusual times that are known to be inconvenient to the debtor.

At no point in his Complaint does Willis identify which communications he alleges violated §§ 445.252(e) or (n). Furthermore, Willis does not identify how those communications would constitute inaccurate, misleading, untrue or deceptive statements or were made in a harassing, oppressive, or abusive manner. The Court will dismiss Willis's claim for failure to state a claim.

### G. Conversion

Finally, Defendant alleges a claim for conversion of the leased vehicle. At common law, conversion consists of any "'distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.'" *Dept. of Agric. v. Appletree Mktg., L.L.C.*, 485 Mich. 1, 13, 779 N.W.2d 237, 244 (2010) (quoting *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391, 486 N.W.2d 600, 606 (1992)). "Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Id.*

In this case, Section 27 of the Lease provides:

**C. OWNERSHIP.** This agreement is a lease only. We are the owner of this Vehicle. You have no rights of ownership or title to the Vehicle unless you exercise your purchase option. You will not allow any lien or encumbrance to attach to the Vehicle.

(Compl., Ex. A, Docket no. 1, Page ID 29.)

According to the terms of the Lease, Willis had no property rights in the vehicle unless he exercised his purchase option. As the Court has previously determined, after returning the vehicle, Willis had no right to exercise his purchase option. Therefore, when Defendant took control of the vehicle, Willis had no property rights in the vehicle. As such, Willis cannot state a claim for conversion.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Plaintiff's complaint for failure to state a claim. The Court will grant summary judgment in favor of Defendant on Defendant's Counterclaim.

A separate judgment will issue.


Dated: February 14, 2013              /s/ Gordon J. Quist
                                     GORDON J. QUIST
                                  UNITED STATES DISTRICT JUDGE